IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 CV 226-MU

| United States Fire Insurance Company, | ) | |
| --- | --- | --- |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Richard Weishorn, Official Unsecured | ) | |
| Creditors' Committee, and Zurich | ) | |
| American Insurance Company, | ) | |
| | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

## **INTRODUCTION**

U.S. Fire appeals the bankruptcy court's ruling that U.S. Fire did not have standing to contest the Appellee's Motion to Lift Stay, and the court's order lifting stay and modifying the injunction that was barring the Appellee's separate superior court claim. This Court holds, as a matter of law, that U.S. Fire did not have standing in the bankruptcy court to contest the order, nor does U.S. Fire have standing in this court to seek review of the decision below. The bankruptcy court's order is therefore AFFIRMED.

## **BACKGROUND**

Appellee Richard Weishorn ("Weishorn") was injured while working for R. Bratti Associates, Inc. ("Bratti"). Bratti was a sub-contractor of the Debtor, J.A. Jones/Tompkins Builders, Inc. n/k/a J.A. Jones, D.C., Inc. ("J.A. Jones" or "Debtor"). When the injury occurred, Bratti was insured by Appellant United States Fire Insurance Company ("U.S. Fire"). Weishorn

sued J.A. Jones, claiming that Bratti was an employee of the former. U.S. Fire is defending J.A. Jones in that suit.

Before Weishorn's claim was adjudicated, J.A. Jones sought bankruptcy protection. Outstanding claims were to be processed under the J.A. Jones Liquidation Plan ("the Plan"). Weishorn submitted a proof of claim seeking compensation under the Plan. The claim was classified as a "Zurich-Insured Unsecured Claim."

Zurich American Insurance Company ("Zurich") was one of J.A. Jones' insurers. Zurich was also a potential claimant against J.A. Jones' bankruptcy estate, with unsecured claims approximating $45 million. Zurich, however, waived its unsecured claims against Debtor and contributed $2.1 million to a settlement fund in exchange for favorable treatment under the Plan. This favorable treatment included the Zurich Bar Provision, which enjoins a holder of a Zurich-Insured Unsecured Claim from pursuing its claim until "such holder's completion and satisfaction of the procedures set forth" in the Plan. (Appellant Br. 4.) These procedures required a claim holder to file a Supplemental Proof of Claim within a brief window of time, and Weishorn's filing was late.

Several years after Weishorn filed his claim with the Debtor, the Unofficial Unsecured Committee of J.A. Jones, Inc. ("the Committee") filed an objection, stating that U.S. Fire was liable; not the Debtor or Zurich. Weishorn then filed his response, and a Motion to Lift Stay of Litigation so he could proceed with his claim against J.A. Jones in the Superior Court in the District of Colombia. Zurich then filed a motion supporting the Committee's objection and opposing Weishorn's Motion to Lift Stay. Zurich pointed to Weishorn's late filing as an additional reason to bar his claim. U.S. Fire subsequently filed its own motions.

After a spate of additional replies and responses, the bankruptcy court held a hearing on the Motion to Lift Stay. The Committee and Zurich withdrew their objections to Weishorn's claim, which left U.S. Fire as the sole opponent to Weishorn's motion. At the hearing, the judge found that U.S. Fire was not a third-party beneficiary of the Zurich Settlement and Bar, and therefore U.S. Fire's interest was insufficient to support standing. The court subsequently issued an order in favor of Weishorn, allowing his superior court litigation to proceed.

U.S. Fire now appeals the bankruptcy court's order.

**STANDARD OF REVIEW**

The bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed for clear error. *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001).

**DISCUSSION**

I. *Standing in the Bankruptcy Court*

J.A. Jones first appeals the bankruptcy court's holding that it lacked a sufficient interest to support standing. J.A. Jones lacked standing because it ran afoul of two prudential limitations: (1) the third party standing rule, and (2) the zone of interest limitation. Despite 11 U.S.C. § 1109's broad language allowing a "party in interest [to] appear and be heard on any issue" in a bankruptcy case, courts still apply standard constitutional and prudential limitations on standing. *In re Myers*, 168 B.R. 856, 862 (Bkrtcy. D. Md. 1994) (quoting *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 643-44 (2d Cir. 1988).

The third party standing rule is a prudential limitation that "bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth*

*v. Seldin,* 422 U.S. 490, 509 (1975). The concerns motivating this rule are particularly pressing in the bankruptcy context since the "proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself." *In re Myers*, 168 B.R. at 863 (citing *Kane v. Johns-Manville Corp.,* 843 F.2d at 643-44).

U.S. Fire violated the third party standing rule because its objection to the Motion to Lift Stay was based on Weishorn's failure to abide by the Zurich Bar Provisions—an agreement to which U.S. Fire was neither a party nor a beneficiary. The rights enshrined in the Zurich Bar belong to Zurich Insurance and the Committee. The Bar was born of a compromise between the Committee and Zurich: Zurich waived approximately $45 million in claims against the Debtor and contributed $2.1 million to a pool for settling claims against the Debtor; and Zurich received a favorable system for processing Zurich-Insured Claims. U.S. Fire made no attempt to include itself in the Zurich Settlement, and the Settlement remained silent as to U.S. Fire. U.S. Fire cannot rely on the Zurich Bar Provisions since U.S. Fire has no rights under the Bar. Indeed, the two parties who do have rights under the Bar—Zurich and the Committee—have waived their objections to Weishorn's ostensible violation of those rights. This situation—a third party asserting the rights of other parties who do not wish to vindicate those rights—is precisely the scenario that the third party standing rule seeks to avoid.

Beyond offending the third party standing limitation, U.S. Fire's interest in no longer defending J.A. Jones in superior court is outside the "zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Assoc. of Data Processing Service Orgs., Inc. v. Camp,* 397 U.S. 150, 153 (1970). A court will not grant a party standing under the Bankruptcy Act to assert an interest that the Act does not itself protect. *See Caplin v.*

*Marine Midland Grace Trust Co.,* 406 U.S. 416, 434 (1972) (holding the trustee of a debtor's estate had no standing to sue the indenture trustee because the Bankruptcy Act had no provisions for such a suit). Although the Bankruptcy Act discharges the debts of the bankrupt, § 524(e) of the Act preserves the right of claimants to pursue "any other entity"—including an insurance company—that is liable for the discharged debt.[1] Relying on 524(e), the court in *In re Jason Pharmaceuticals, Inc.*, 224 B.R. 315 (Bkrtcy. D. Md. 1998), held that a claimant could proceed nominally against a debtor in order to recover against a debtor's insurer. *Id.* at 322. The court wrote that "the discharge in bankruptcy, along with the coextensive permanent injunction and fresh start, are exclusive to the debtor, and *do not otherwise affect the enforcement of any underlying debt, or any nondebtor liability thereon.*" *Id*. at 321. Based on the language of §524(e), and the Act as a whole, it is clear that the zone of interests protected by the Act does not include a nondebtor's interest in avoiding the liability for which it indemnified the debtor.

Here, U.S. Fire had no standing since its objection to the Motion to Lift Stay is based on an interest in avoiding its obligations as an insurer and resolving the unliquidated liabilities on its books; neither of which are within the zone of interests protected by the Act. U.S. Fire's position lands it squarely under 524(e): it has an obligation to cover the debts of J.A. Jones that fall within the U.S. Fire primary insurance policy. Like *In re Jason Pharmaceuticals*, Weishorn is essentially suing J.A. Jones/Tompkins in name only. U.S. Fire is defending J.A. Jones in the superior court, and U.S. Fire will be liable for damages should Weishorn's claim succeed. J.A Jones' rights under the Act have been preserved, and prudence dictates that U.S. Fire lacks standing to assert interests that the Act does not seek to protect.

---

[1] Section 524(e) reads as follows: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. §524(e).

This Court also doubts that J.A. Jones can obtain meaningful relief by attempting to apply the Zurich Bar to Weishorn's claim since § 524(e) allows Weishorn to recover any amount for which U.S. Fire is liable—regardless of Weishorn's compliance with the Plan.

For the reasons given above, the Bankruptcy Court was correct in holding that U.S. Fire lacked standing.

II. *Appellate Standing*

U.S. Fire does not have standing to appeal the bankruptcy court's order. A bankruptcy appellant must be a "party aggrieved" by a lower court's order. *Land-O-Sun Dairies, Inc. v. Pine State Creamery Co.*, 200 B.R. 125, 126 (E.D.N.C. 1996). A party is aggrieved when it is "directly and adversely affected pecuniarily"; i.e. when an order "diminishes his property, increases his burdens, or impairs his rights." *Id.* at 126-27 (citing *In re Fondiller,* 707 F.2d 441, 442-44 (9th Cir.1983)). Although this standard would appear to be broad, in bankruptcy cases "'the need to limit collateral appeals is particularly acute'"; therefore this standard is more stringent than Article III's "case and controversy" requirement. *Id.* (quoting *Travelers Ins. Co. v. H.K. Porter Co., Inc.,* 45 F.3d 737, 741 (3d Cir. 1995)).

The likelihood that an order of the Bankruptcy Court would cause an appellant to become a defendant in a separate claim "does not confer standing to contest [that] order." *See id.* at 127; *Travelers Ins. Co.*, 45 F.3d at 743 ("We are satisfied that standing is precluded if the only interest in the bankruptcy court's order that can be demonstrated is an interest as a potential defendant in [another] adversary proceeding. Such a person . . . is not "aggrieved."). In *Travelers Insurance Co.* the Third Circuit held that Travelers did not have standing to appeal a bankruptcy court order that reinstated defaulted claims, even when (1) Travelers faced derivative liability for the claims, and (2) Travelers was defending itself in separate litigation over the

scope of its policy coverage for the reinstated claims. *Id*. at 742-43. The appellate court wrote that the litigation over the insurance policy was "wholly separate from [the] bankruptcy proceedings, [and] cannot suffice to satisfy the 'directly affecting' standard for standing in bankruptcy appeals." *Id.* at 743, n.7.

The Third Circuit also held that Travelers' rights were neither burdened nor impaired by the bankruptcy court's order. The court reasoned that "a bankruptcy court order which simply permits a claim to be lodged or a lawsuit to go forward without passing on the merits does not necessarily 'aggrieve' the potential defendant." *Id.* at 743. Travelers was neither burdened by the order, nor were its rights impinged, since the order did not pass on the merits of the claims and included language protecting Travelers' ability to contest the scope of the insurance policy. *Id.* In ruling against Travelers, the court surmised that the company was "seeking a windfall at the expense of the claimants." *Id.*

U.S. Fire lacks standing because it is not aggrieved by the bankruptcy court's order. Although the Order will likely cause U.S. Fire to continue defending Tompkins in the superior court action, like *Travelers*, waging a defense in a wholly separate litigation does not confer standing. U.S. Fire argues that its expenditure of resources defending Tompkins is a "'direct' and 'pecuniary' adverse effect." But this imposition, however arduous, is indirect since it is related to a separate action that has no nexus to the debtors' bankruptcy proceedings; in this respect the potential harm travels an overly circuitous route. *See id.* at 743 n.7. Nor does the order impair or burden U.S. Fire's rights. As in *Travelers*, U.S. Fire retains its ability to contest its insurance coverage and J.A. Jones' liability.[2]

---

[2] The bankruptcy court's order reads as follows:

> [P]rovided further that nothing herein shall in anyway: (1) constitute . . . a determination of liability in the Personal Injury Action; . . . (3) prejudice any

For these reasons, IT IS HEREBY ORDERED that the bankruptcy court's decision is AFFIRMED.

Signed: October 13, 2009

Graham C. Mullen
United States District Judge

---

insurer's right to argue that damages, if any, in the Personal Injury Action are a lesser amount; (4) prejudice any rights that U.S. Fire . . . may have as to any defense of liability or coverage under any applicable insurance policy . . .; or (5) prejudice, or constitute a defense to, liability or coverage under any applicable insurance policy of U.S. Fire.

*In Re Jones, Inc.*, No. 03-33532, *3-4 (Bkrtcy. W.D.N.C., Apr. 30, 2008).